76 N.J. Super. 204 (1962)
184 A.2d 12
ALFRED LIGUORI, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FLORENCE LIGUORI, DECEASED AND ALFRED LIGUORI, INDIVIDUALLY, PLAINTIFF,
v.
ALLSTATE INSURANCE COMPANY, A CORPORATION, AND HAROLD A. McDERMOTT, HAROLD McDERMOTT, THE ESTATE OF NICHOLAS BONELLI AND THOMAS PEDERSEN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 29, 1962.
*206 Mr. John E. Wolf for plaintiff (Messrs. Morton Isaacs and Steise, Wolf & Sorrentino, attorneys).
Mr. Gustave A. Peduto for defendants Allstate and McDermott (Messrs. Rooney, Peduto & Sheehy, attorneys).
Mr. J. Edward Bennett for defendant Bonelli.
Mr. Eugene J. Tarrant for defendant Pedersen.
PASHMAN, J.S.C.
This is a summary proceeding instituted by the plaintiff Alfred Liguori, individually and as administrator ad prosequendum of the estate of Florence Liguori, deceased, against defendants Allstate Insurance Company (Allstate) and Harold A. McDermott, Harold McDermott, the estate of Nicholas Bonelli, Jr. and Thomas Pedersen, Jr., directing defendant Allstate to show cause why it should not be restrained from consummating a settlement in the amount of $8,000 with the personal representatives *207 of the defendant estate of Nicholas Bonelli, Jr., and why it should not institute an interpleader action for the purpose of evaluating and ratably distributing the proceeds of an automobile insurance policy issued by Allstate to Harold McDermott. The parties have agreed that final judgment should be entered pursuant to R.R. 4:85-5.
The circumstances from which this action arises are as follows: On January 26, 1962, Alfred Liguori was the owner and operator of a motor vehicle traveling south on Paterson Plank Road, North Bergen, New Jersey, in which vehicle his wife, decedent Florence Liguori was a passenger. The Liguori automobile was involved in a collision with a motor vehicle owned by Harold McDermott and driven by his son Harold A. McDermott, in which decedent Nicholas Bonelli, Jr., and Thomas Pedersen, Jr. were passengers. As a result of the collision, Florence Liguori and Nicholas Bonelli, Jr. were killed and the other parties were injured. (The McDermott vehicle was covered by a policy of automobile liability insurance issued by Allstate in the amount of $10,000 for each injury and $20,000 for each accident.)
Shortly after the aforementioned accident actions were instituted by Alfred Liguori as administrator ad prosequendum of his wife's estate and in his individual capacity, and by Thomas Pedersen, Jr. et al. against Harold McDermott et al., in the Superior and County Courts, Hudson County, respectively. These actions have now been consolidated and are pending in the Hudson County Court. On June 17, 1962, settlement negotiations between Allstate and the parents of decedent Bonelli were concluded and releases were forwarded to Allstate the following day.
In support of his contention that he is entitled to the relief sought, the plaintiff maintains that the aforementioned settlement was the product of "bad faith" on the part of Allstate, which is manifested by the amount of the settlement together with what the plaintiff equivocally characterizes as "misleading conduct" on the part of a Mr. Dennis, a representative of Allstate. Plaintiff states further that *208 unless the court prevents the consummation of the proposed settlement, a serious reduction of available proceeds (to all prospective claimants) will take place and an inequitable preference will occur resulting in the visitation of irreparable harm upon the plaintiff.
The initial problem facing the court in the case sub judice involves the plaintiff's standing to obtain the desired equitable relief in view of the fact that his law action has not been tried, no less reduced to judgment. While a distinction is often drawn between the rights of a beneficiary of a policy of indemnity and that of a policy of absolute liability (the language of the insurance contract being the dispositive criterion), see, e.g., Hynding v. Home Accident Insurance Co., 214 Cal. 743, 7 P.2d 999, 85 A.L.R. 13 (Sup. Ct. 1932), and Fallon v. Mains, 302 Mass. 166, 19 N.E.2d 68 (Sup. Jud. Ct. 1939), the present circumstances compel a different approach. Indeed, our Supreme Court has recently reiterated the salutary proposition that this State is committed to a "strong legislative policy of assuring financial protection for innocent victims of automobile accidents," Indemnity Insurance Co. of North America v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507, 512 (1960); see also Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960); Eggerding v. Bicknell, 20 N.J. 106, 113 (1955), and the State Legislature, in enacting the Motor Vehicle Security-Responsibility Law, N.J.S.A. 39:6-23 et seq., and the Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 et seq., has given equal thrust to this socially desirable remedy. In essence, drivers of motor vehicles are encouraged to secure liability insurance in order to alleviate the possibly harsh effects visited upon the inequitable victims of automotive mishaps. As a complement to the legislative scheme, our courts have interpreted such contracts in a manner most beneficial to the injured party, since he is the one who is ordinarily least able to bear the loss. See, e.g., the Indemnity and Matits cases, supra, which deal with the *209 coverage of the standard "omnibus clause" in relation to "second permittees." The conclusion to be reached seems inescapable. It is incumbent upon the parties to automotive liability insurance contracts to conduct their dealings in such a manner, that being called upon to apply the proceeds of that policy, they refrain from compounding the injuries of the very persons for whose benefit the contract was intended.
Despite the preceding observation it is not true that every injured party is assured full compensation for the loss he suffers. Unlike our sister states of New York and Massachusetts, New Jersey does not require its licensed drivers to carry liability insurance. Nor is the operator who does acquire such a policy required to insure himself beyond the $10,000/$20,000 limit. N.J.S.A. 39:6-46(b). Nevertheless, where a private fund does exist which is shown to be unduly threatened so as to jeopardize the limited chance of recompense afforded persons in plaintiff's position, the availability of this court as a forum for certain types of relief where the circumstances so demand is unquestionably a concomitant part of the overall scheme.
It is not inappropriate to note in passing that our courts have had occasion to apply a similar analysis as regards the necessity of permitting victims of automobile accidents to establish their rights against an insurer prior to judgment. In Le Felt v. Nasarow, 71 N.J. Super. 538 (Law Div. 1962), it was held that the typical "no action" clause of an automobile liability policy did not bar the maintenance of a declaratory judgment proceeding at law to determine the liability coverage of a disclaiming insurer prior to judgment. While the procedural differences between Le Felt and the instant suit are apparent, the underlying rationale cannot be ignored. Where plaintiff would be put to a useless and harmful delay due to the alleged misconduct of an insurer, immediate intermediate relief will be forthcoming if justified.
Having disposed of the preliminary question of standing, a consideration of those issues directly raised in the pleadings *210 and affidavits of the parties to the instant suit is in order. To reiterate, plaintiff asserts that the settlement made by Allstate with the Bonelli representatives amounts to an inequitable preference and should be restrained. In the majority of cases touching upon the issue of whether one of several claimants to the proceeds of an automobile liability policy may restrain the insurer from consummating separate settlements with co-claimants in a multi-party action arising out of the same accident, on the ground that such payment will seriously deplete or exhaust the proceeds remaining, the courts have denied relief on various grounds. In a case decided by our former Court of Chancery, Turk v. Goldberg, 91 N.J. Eq. 283 (Ch. 1920), the facts were as follows: The Jitney Act, L. 1916, p. 283, required the owner of a licensed auto bus to file an insurance policy in the sum of $5,000 with a designated official in order to insure against loss imposed upon the owner in any actions for damages for bodily injury or death resulting from an accident. Subsequent to just such a mishap a succession of suits was brought, some of which were reduced to judgment at the time the plaintiff, who had not yet reduced her claim to judgment, brought suit against the insurer to restrain it from paying any more judgments, $2,200 having been paid by that time. Plaintiff alleged, without substantial dispute, that the several suits were likely to total $30,000 and since the policy was issued for the benefit of all parties injured, the proceeds should be paid into court or to a receiver pending final judgment in all the suits to assure pro rata distribution. In denying relief the court proceeded on the theory that since plaintiff's claim was not yet reduced to judgment it did not have the status of a lien on the proceeds, and that had the Legislature anticipated such a situation and intended a pro rata distribution, it would have said so expressly. The court added:
"Every person injured by a licensed auto bus may be said to have an inchoate lien upon the insurance policy, which inchoate right can ripen into an actual lien only by the recovery of final *211 judgment against the bus owner and service of notice of the judgment on the insurance company. In the absence of any statutory provision to the contrary, such liens have priority in the order in which they mature and are presented to the insurance company." 91 N.J. Eq., at p. 287.
Succeeding cases in other jurisdictions have taken a like approach. See, e.g., Bartlett v. Travelers' Ins. Co., 117 Conn. 147, 167 A. 180 (Sup. Ct. Err. 1933); Bruyette v. Sandini, 291 Mass. 373, 197 N.E. 29 (Sup. Jud. Ct. 1935).
In a recent case which dealt with the same basic issue, Alford v. Textile Ins. Co., 248 N.C. 224, 103 S.E.2d 8, 70 A.L.R.2d 408 (1958), the Supreme Court of North Carolina discussed an additional factor which is at the very core of plaintiff's cause of action in the instant case. In Alford, the plaintiff was a judgment creditor of the insured who instituted suit against the liability insurer on the ground that the $10,000 maximum proceeds of the liability policy had been unfairly depleted due to settlements made with several other parties injured in the same accident. Plaintiff's judgment was for $5,000, whereas only $3,175 of the proceeds remained. In denying relief the court observed that the contract of insurance contained an express provision giving the insurer the right to make settlements which it deemed expedient. Said the court:
"It is a matter of common knowledge that fair and reasonable settlements can generally be made at much less than the financial burden imposed in litigating claims. It is for this reason that the courts have consistently held that the insurer owes a duty to its insured to act diligently and in good faith in effecting settlements within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy. Liability has been repeatedly imposed upon insurance companies because of their failure to act diligently and in good faith in effectuating settlements with claimants." 103 S.E.2d, at p. 12.
The Allstate policy involved here contains a similar clause relating to the consummation of settlements.
It is to be noted that the Turk and Alford cases contain elements which bear directly upon the issues raised *212 in the instant case. While the decision in Turk makes no mention of any bad faith claim, it does concern a non-judgment claimant's right to enjoin disproportionate distribution of limited proceeds. Putting to one side the choate-inchoate discussion, it clearly establishes that there is no right in such a claimant to interfere with distribution merely because such payment diminishes the fund. Thus, pro rata distribution in such circumstances is not required.
To the extent that Turk suggests that the right of the plaintiff, being "inchoate," prevents a judicial inquiry into the distributions already made, I respectfully disagree. Consonant with the discussion earlier in this opinion, the thrust of our more recent decisions militates against such a strict approach. To further buttress that analysis I direct attention to N.J.S.A. 39:6-48(a) which provides:
"The motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
(a) The liability of a company under a motor vehicle liability policy shall become absolute when loss or damage covered by the policy occurs and the satisfaction by the insured of a final judgment * * * shall not be a condition precedent to the right or duty of the carrier to make payment on account of the loss or damage. * * *"
This provision might appear at first glance to be inapposite to the argument advanced, since it seems merely to sanction insurer-claimant settlements without first requiring that a claimant pursue his claim to judgment. However, it is equally apparent from a logical standpoint that another claimant having equal standing can subject the settlement to judicial scrutinization for the purpose of proving such elements of misdealing or bad faith that may be attendant thereto. Consequently, where the insurer can settle with a non-judgment claimant voluntarily, it should not be heard to say that a party standing on an equal footing must bide his time and recover judgment before attacking the bona fides of the transaction. On the other hand, settlement with a co-claimant under circumstances which *213 do not contain elements of bad faith is, and should be, immune from a demand for restraint and ratable distribution.
Apart from an injured party's right (under certain circumstances) to subject settlements to judicial scrutiny, it is an oft-repeated rule of judicial policy that the settlement of litigation is to be encouraged. Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961), certif. denied Jannarone v. Calamoneri, 35 N.J. 61 (1961); Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957); Carlsen v. Carlsen, 49 N.J. Super. 130, 136 (App. Div. 1958). As previously noted, the policy issued to Harold McDermott by Allstate contains the following provision:
"Allstate will defend any lawsuit even if groundless, false, or fraudulent, against an insured for such damages which are payable under the terms of this policy, but may make such settlement of any claim or suit as it deems expedient." (Emphasis added)
At the risk of appearing repetitious, the conduct which the plaintiff alleges constitutes bad faith on the part of the insurer is as follows: (1) the reduction of the available proceeds by 40% stemming from Allstate's settlement of the Bonelli claim works an inequitable preference from which the plaintiff is entitled to relief; (2) the aforementioned transaction was effectuated without a proper evaluation by Allstate of the remaining claims; and (3) the Bonelli claim was settled without any attempt on the part of Allstate to consider the comparative weight of the Liguori claims despite overtures made to that effect by plaintiff's attorney.
The burden of alleging and establishing bad faith in the present circumstances rests upon the plaintiff. 21 Appleman, Insurance Law and Practice § 12310, pp. 148-49 (1942). The mere fact that the $8,000 settlement constitutes a substantial depletion of the proceeds does not, standing alone, raise any element of bad faith. That payment, *214 albeit 40% of the total proceeds, was well within the maximum coverage. There is simply no evidence (other than speculative assertions by counsel for plaintiff) that it is grossly disproportionate in comparison with the remaining claims. Allstate had a contractual right to make that settlement and it cannot be set aside on the strength of mere inferences to be drawn from judicial surmise.
The further allegation contained in the affidavit of Mr. Wolf, plaintiff's attorney, concerning Allstate's refusal to discuss a possible settlement of the Liguori claims, does not give rise to an inference from which a finding of bad faith can be drawn. (The reason allegedly given by Allstate was that insufficient time had elapsed since the date of the accident.) To begin with, even if it be assumed that this representation was made to Mr. Wolf on behalf of Allstate, it has no independent significance in relation to the fairness of the Bonelli settlement. While an insurer may wish to collect data on all the claims before negotiating settlement of any particular one, it is certainly under no legal compulsion to do so. Whether multiple claims are to be treated one at a time or collected and evaluated together, is a choice solely within the discretion of the insurer. Characterizing such a step by step approach as "piecemeal" is rhetoric without legal significance. When, as is the case here, a presumptively valid and adequate award has been made to one of several claimants, the fact that the remaining claimants, or any one of them, have not been taken into the confidence of the settling parties falls far short of establishing an adequate ground for equitable relief. This is especially true where to hold otherwise would interfere with the judicially favored policy of avoiding unnecessary expense and delay through settlement practice. Bona fide settlements between prospective litigants should not be restrained on the basis of speculative claims of mala fides.
It is, therefore, the opinion of this court that the order to show cause be discharged. Counsel may present an appropriate form of judgment.