Anthony VOCCIO and Domenic Voccio,
Plaintiffs, Appellants,

v.

RELIANCE INSURANCE COMPANIES,
et al., Defendants, Appellees.

Anthony VOCCIO and Domenic Voccio,
Plaintiffs, Appellees,

v.

RELIANCE INSURANCE COMPANIES,
et al., Defendants, Appellants.

Nos. 82–1625, 82–1719.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1983.

Decided March 24, 1983.

Joseph G. Miller, Providence, R.I., with whom William T. Murphy, and Joseph G. Miller, Ltd., Providence, R.I., was on brief, for Anthony Voccio and Domenic Voccio.

Peter Lawson Kennedy, Providence, R.I., with whom Adler Pollock & Sheehan Incorporated, Providence, R.I., was on brief, for Reliance Insurance Companies, et al.

Before ALDRICH and BREYER, Circuit Judges, and ZOBEL,* District Judge.

BREYER, Circuit Judge.

This case arises out of a serious auto accident that took place more than ten years ago. William Lopes, Jr., driving his mother Anna Lopes' car, lost control of the car and hit two pedestrians, Mary Petrarca and Anthony Voccio. Petrarca, a fifty-eight year old housewife, died about eleven minutes after being hit. Voccio, an eleven year old child, lost the lower part of both his legs. The Lopeses were nearly judgment-proof and carried liability insurance of only $25,000. The insurance company, Reliance, settled with Mrs. Petrarca's husband for half of the policy amount, $12,500. Anthony Voccio and his father refused to

* Of the District of Massachusetts, sitting by designation.

accept the other half and sued the Lopeses. Although they won a verdict for several hundred thousand dollars, the Lopeses could not pay. The Voccios then promised not to try to collect the judgment. In return, the Lopeses assigned to the Voccios whatever claim they might have against Reliance for "bad faith" in carrying out the settlement negotiations.

The Voccios, standing in the Lopeses' shoes, sued Reliance in Rhode Island state court. Reliance removed the case to federal court on grounds of diversity. The jury in the federal court found that Reliance's "bad faith" had led to the large excess judgment against the Lopeses and would have required Reliance to pay this excess to the Voccios. The district judge, however, granted Reliance a judgment n.o.v. The judge held that no reasonable juror could have believed that Reliance's actions demonstrated any "bad faith" that in turn led to the excess judgment. What we have before us is, in essence, the Voccios' appeal from this district court determination.

In principle, this case might raise a number of interesting and difficult issues of Rhode Island law. Does that law permit the Lopeses to assign their claim against Reliance to the Voccios? *See, e.g., Moutsopoulos v. American Mutual Insurance Co. of Boston,* 607 F.2d 1185, 1189–90 (7th Cir. 1979) (Wis. law: assignment allowed); *Dillingham v. Tri-State Insurance Co.,* 214 Tenn. 592, 381 S.W.2d 914 (1964) (assignment prohibited); Annot., 12 A.L.R.3d 1158 (1967). Did the excess judgment against the Lopeses damage them? They were nearly judgment-proof and the Voccios promised not to execute the judgment. Were they harmed in the amount of the several hundred thousand dollars that the Voccios seek from the insurance companies? *See, e.g.,* 7C J. Appleman, *Insurance Law and Practice* § 4711 at 417–19 (W. Berdal rev. 1979); Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv.L. Rev. 1136, 1173–82 (1954); Annot., 63 A.L. R.3d 627 (1975). We need not consider these questions, however, nor certify them to the Rhode Island Supreme Court, *see Smith v. Cumberland School Committee,*

R.I., 415 A.2d 168 (1980), for even assuming answers favorable to the Voccios, we believe the district court's award of judgment n.o.v. was proper.

In order to prevail the Voccios must at least show that: 1) the insurance company's *"bad faith"* in settling the Petrarca and Voccio claims, 2) *caused* the excess judgment. *See Bibeault v. Hanover Insurance Co.,* R.I., 417 A.2d 313, 319 (1980). As a matter of law, on the basis of this record, we doubt that the Voccios could prevail as to the first of these matters. We are certain they cannot prevail as to the second.

"Bad faith" is not easily defined. Yet we know that it involves behavior worse than simple negligence. *See Brown v. United States Fidelity and Guaranty Co.,* 314 F.2d 675, 679–80 (2d Cir.1963). In Rhode Island it seems to require some form of "reckless" behavior, such as a "reckless indifference to facts" or "a lack of a reasonable basis" for the carrier's decision. *Bibeault v. Hanover Insurance Co.,* 417 A.2d at 319. As stated strongly, the duty to negotiate in good faith would require the carrier to give "the interest of the insured" consideration "equal to that consideration given its own interest," *Liberty Mutual Insurance Co. v. Davis,* 412 F.2d 475, 483 (5th Cir.1969), or "to treat the claim as if it were alone liable for the entire amount." *Bell v. Commercial Insurance Co. of Newark,* 280 F.2d 514, 515 (3d Cir.1960); *see Brown v. United States Fidelity and Guaranty Co.,* 314 F.2d at 678; Keeton, *supra,* at 1148. Most "bad faith" cases involve an insurance company's refusal to accept an offer of settlement within the available policy limits—a state of affairs (unlike this one) where the interests of the carrier and insured are clearly opposed. *See, e.g., Luke v. American Family Mutual Insurance Co.,* 476 F.2d 1015 (8th Cir.), *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973); *Peterson v. Allcity Insurance Co.,* 472 F.2d 71 (2d Cir.1972); *Herges v. Western Casualty and Surety Co.,* 408 F.2d 1157 (8th Cir.1969); *State Farm Mutual Automobile Insurance Co. v. Brewer,* 406 F.2d 610 (9th Cir.1968). Only occasionally has liabili-

ty been found where the conflict of interest has been less apparent; and in such cases the evidence of reckless behavior is strong. *See Brown v. United States Fidelity and Guaranty Co.,* 314 F.2d at 682.

We doubt that a reasonable jury, unswayed by sympathy for the Voccios, could have found any relevant "bad faith" here. The evidence, viewed most favorably to plaintiffs, *see Ramos Rios v. Empresas Lineas Maritimas Argentinas,* 575 F.2d 986, 989 (1st Cir.1978), suggests that Reliance's investigation of the Petrarca claim and its efforts to keep the Lopeses informed about settlement negotiations left something to be desired. *Cf.* 7C J. Appleman, *supra,* at §§ 4711 at 370–72, 4712 at 480; 14 G. Couch, *Cyclopedia of Insurance Law* § 51:145 (2d ed. 1982). But even if a jury might have found such conduct to be negligent or even "reckless" viewed alone, here the conduct is relevant only insofar as it led the carrier to pay $12,500 to the Petrarcas (and leave only $12,500 for the Voccios). At bottom, the Voccios must show that this 50–50 division of the insurance policy proceeds was highly unreasonable, reckless or in "bad faith"—an exceedingly difficult task.

For one thing, the carrier met together with counsel for both Petrarca and the Voccios and sought suggestions on how to divide the money—a course recommended in *Farmers Insurance Exchange v. Schropp,* 222 Kan. 612, 567 P.2d 1359, 1367 (1977). For another thing, unlike the claimant in *Brown,* the Voccios did not agree to participate in an equitable division of the policy proceeds. In fact, the Voccios consistently refused to make any offer of settlement below the policy limits. These facts make more reasonable the carrier's decision to give Mr. Petrarca half of the amount. Furthermore, Mr. Petrarca's claim was substantial. His wife had been killed; she was conscious for a time before death (and thus may have suffered); she was a housewife for the loss of whose services a husband can be compensated under Rhode Island law. *See Burns v. Brightman,* 44 R.I. 316, 117 A. 26 (1922). Moreover, Mr. Petrarca was willing to settle while the Voccios were not.

Judicial decisions have consistently allowed insurers to settle on the basis of "first come, first served." *See, e.g., Standard Accident Insurance Co. of Detroit v. Winget,* 197 F.2d 97, 104 (9th Cir.1952); *Bartlett v. Travelers' Insurance Co.,* 117 Conn. 147, 167 A. 180 (1933); *Bennett v. Conrady,* 180 Kan. 485, 305 P.2d 823 (1957); *Bruyette v. Sandini,* 291 Mass. 373, 197 N.E. 29 (1935); *Liguori v. Allstate Insurance Co.,* 76 N.J.Super. 204, 184 A.2d 12 (Ch. 1962); *Alford v. Textile Insurance Co.,* 248 N.C. 224, 103 S.E.2d 8 (1958); Keeton, *Preferential Settlement of Liability-Insurance Claims,* 70 Harv.L. Rev. 27, 37–38 (1956); Comment, *Pro-rating Automobile Liability Insurance to Multiple Claimants,* 32 U.Chi.L.Rev. 337, 337 (1965). Indeed, had the carrier refused to settle with Petrarca, the Lopeses might well have been faced with two suits rather than one, or with a suit by Petrarca instead of Voccio. Under these circumstances, it is difficult to see how splitting the insurance proceeds and settling Mr. Petrarca's claim for $12,500 could constitute "bad faith."

We need not definitively hold that no "bad faith" exists, however, for we agree with the district court that whatever "bad faith" there may have been did not bring about the "excess" judgment. The crucial difference between this case and the *Brown* case (on which the Voccios rely) is the absence of any evidence suggesting that a "good faith" settlement with Mr. Petrarca would have led to a different outcome. There is no reason to believe that further investigations of the Petrarca claim or greater efforts to keep the Lopeses informed would have brought about a settlement with the Voccios. Indeed, the Lopeses' counsel initially appears to have been pleased with the settlement, and to have expressed no discontent until 1977, several years after the settlement took place.

The Voccios' strongest argument is that a 50–50 split was unreasonable in light of Mrs. Petrarca's age and Anthony Voccio's youth. Yet, the reasonableness of the carrier's belief that Mr. Petrarca's claim was worth more than $12,500 cannot be ques-

tioned. As previously mentioned, the carrier knew Mrs. Petrarca was fifty-eight years old, that she was conscious before death, and that compensation is payable for the loss of a housewife's services in Rhode Island. That Mr. Petrarca might have had to submit additional evidence of the value of those services in a "wrongful death" action, R.I.Gen.Laws § 10–7–1.1; *see Pray v. Narragansett Improvement Co.,* R.I., 434 A.2d 923, 929 (1981); *Taft v. Cerwonka,* R.I., 433 A.2d 215, 219–20 (1981); *Wiesel v. Cicerone,* 106 R.I. 595, 261 A.2d 889, 891–92 (1970); *Burns v. Brightman,* 117 A. at 29, is beside the point, for here the issue is the carrier's "state of mind." And, as to that, it was reasonable for the carrier to infer from these facts that Mr. Petrarca had a claim significantly exceeding the policy limit. Indeed, the only evidence specifically valuing the Petrarcas' claim in the court below put its value at over $75,000.

The Voccios' argument that the 50–50 split was improper rests on the claim that the split was inequitable as between the Voccios and Petrarca, not on a claim that Reliance breached a duty to the Lopeses. Yet, even if we evaluated the settlement from the standpoint of such equities, we would affirm the district court. That is to say, we do not see how anyone could find Reliance to be in "bad faith" for paying significantly more than $5,000—say, $10,000 to Petrarca. But even if Petrarca had been willing to settle for $10,000, there is no evidence in the record that the Voccios would have settled for $15,000. Indeed, there is considerable evidence to the contrary, for the Voccios refused to mention any settlement figure within the policy limits up to the time of the personal injury trial, and at that time they still insisted on the full $25,000. Even if William, Jr. and Anna Lopes were to have contributed their personal assets to the settlement, the Voccios do not argue that they could have contributed more than $6,000. In sum, we do not see how a jury could have concluded that an extra $2,500 or so from Reliance could have led to settlement, nor do we see how a jury could have concluded that the utmost "good faith" on the part of the

carrier would have produced more than an additional $2,500.

For these reasons, the judgment of the district court is

*Affirmed.*