



FILED

Oct 21 2025, 11:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-CT-33

## Bradley Baldwin, Individually and as Assignee of Tommi C. Hummel and Travor Hummel,

*Appellant-Defendant and Counter-Claimant,*

and

## Bradley Baldwin, Individually and as Assignee of Jess M. Smith, III, of Tom Scott & Associates, P.C., as Special Personal Representative of the Estate of Jill L. McCarty, Deceased,

*Appellant-Defendant and Counter-Claimant,*

–v–

## The Standard Fire Insurance Company,

*Appellee-Plaintiff and Counter-Defendant,*

and

## Tommi C. Hummel, Travor Hummel, Jill L. McCarty, John M. Hopkins, State Farm Mutual Insurance Company, and Department of Child Services Indiana Child Support Bureau,

*Other Defendants below.*

Argued: April 24, 2025 | Decided: October 21, 2025

Appeal from the Marshall County Circuit Court
No. 50C01-1901-CT-3
The Honorable Curtis D. Palmer, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CT-2728

---

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa and Molter concur.
Justice Goff concurs in part and dissents in part with separate opinion.

**Slaughter, Justice.**

When insurance coverage is insufficient to satisfy multiple claimants, insurers face a dilemma. An insurer can seek individual settlements, but this approach risks exhausting policy limits before satisfying all claimants. Another option is to refrain from individual settlements in hopes of attaining a global settlement, but this approach may fail and expose the insured to increased personal liability. Either option creates risks for the insured and thus exposes the insurer to a later claim that it breached its duty of good faith and fair dealing to its insured, or even that it acted in bad faith.

Here, the insurer facing this dilemma filed an interpleader action naming all known claimants. The insurer deposited the policy limits with the trial court and continued to defend its insured against all claims. We hold that this choice did not breach the insurer's duty of good faith and fair dealing to its insured and did not amount to bad faith.

I

A

In June 2018, Tommi Hummel crashed into a vehicle driven by Bradley Baldwin. The resulting injuries were severe. An ambulance took Baldwin

to a local hospital; Hummel and one of her passengers, John Hopkins, were both airlifted to a different hospital. A second passenger in Hummel's vehicle, Jill McCarty, fled the scene apparently unharmed.

Hummel had an automobile insurance policy with Standard Fire Insurance Company. The policy provided bodily injury liability coverage of up to $50,000 per person, capped at $100,000 per accident. Standard Fire's post-accident investigation determined that Hummel faced claims from three potential claimants: her own two passengers, Hopkins and McCarty; and the driver of the other vehicle, Baldwin. As part of its investigation, Standard Fire reached out to all interested persons to gather information. All except McCarty responded and worked with Standard Fire.

Just three months after the accident, Baldwin sued Tommi and her husband, Travor Hummel, for injuries resulting from Tommi's alleged negligence, prompting Standard Fire to hire counsel to defend the Hummels as their policy required. Though Baldwin also sued the vehicle's other passengers, Hopkins and McCarty, our opinion today concerns only the claims arising out of Baldwin's lawsuit against the Hummels.

Two months after suing the Hummels, Baldwin made a "time-limited settlement demand" for the $50,000 per-person policy limit. The demand would expire twenty days after Standard Fire received it. Standard Fire, which controlled all settlement decisions under the policy, rejected Baldwin's demand after concluding that both Baldwin's and Hopkin's claims were "certain" to "exceed[] the $50,000 limit." As the Hummels' retained counsel explained to them, the concern with accepting Baldwin's settlement demand was the premature "exhaustion of the $100,000 policy limits". Their counsel noted that if Standard Fire "pays the total limits" on Baldwin's claim and the expected claim from Hopkins, the Hummels would "potentially have uninsured exposure for any claim asserted by Jill McCarthy [sic] based upon the exhaustion of the policy limits coverage."

A month after rejecting Baldwin's settlement demand, Standard Fire filed an interpleader action with the trial court naming Baldwin, Hopkins, and McCarty as interested parties to the insurance policy's proceeds. Interpleader "is a remedial device that allows parties to be joined in an action where there is uncertainty as to which of multiple claimants a party

may be liable." *First Chicago Ins. Co. v. Collins*, 141 N.E.3d 54, 64 (Ind. Ct. App. 2020) (citing Ind. Trial Rule 22(A) (interpleader)). Standard Fire determined that interpleader was "the best option" because it "will be the best way to protect" the Hummels. The Hummels' retained counsel explained Standard Fire's reasoning to Baldwin's counsel: Of the three "potential claimants" against the Hummels, Standard Fire concluded, "at least two . . . could exceed policy limits", so it believed interpleader offered the best path forward.

In its interpleader filings, Standard Fire admitted that it was liable to pay the $100,000 policy limit but said it was "uncertain as to which party or parties is entitled to receive all or any part" of the $100,000. Standard Fire deposited $100,000 with the trial-court clerk and asked the court to issue a declaratory judgment that Standard Fire had performed all its duties under the policy. The court accepted Standard Fire's interpleader action but did not issue the requested declaration. The court eventually ordered $50,000 to be released to Baldwin and $50,000 to Hopkins and the Indiana Department of Child Services for past-due child support.

Meanwhile, as the trial date approached in Baldwin's suit against the Hummels, Baldwin upped the ante by demanding $700,000 to settle all his claims against them. Standard Fire declined. But the Hummels, without obtaining Standard Fire's required consent under the policy, agreed to settle with Baldwin for the full $700,000 demand. The Hummels assigned to Baldwin any claims they might have against Standard Fire in exchange for Baldwin's agreement not to enforce his judgment against them. Further, the Hummels would be entitled to the lesser of $20,000 or ten percent of any future judgment Baldwin obtained against Standard Fire.

B

Based on his assignment, Baldwin filed amended counterclaims against Standard Fire in the interpleader action. Baldwin alleged that by rejecting his initial settlement demand for $50,000, the insurance policy's per-person limit, Standard Fire breached its duty of good faith and fair dealing to the Hummels. Baldwin also alleged that Standard Fire acted in bad faith toward the Hummels and should pay punitive damages.

Standard Fire moved for partial summary judgment on these claims. It argued that rejecting Baldwin's settlement demand and filing the interpleader action were reasonable efforts to protect the Hummels' interests given multiple potential claims against their policy. Baldwin disagreed, contending that Standard Fire's rejection of his $50,000 settlement demand followed by the interpleader action placed its own interests above the Hummels'. As purported evidence of bad faith, Baldwin obtained an affidavit from an expert witness, a professor of insurance and risk management. The expert attested: "It is obvious, or can be strongly inferred, that the choice of Standard Fire to pursue an interpleader action in lieu of accepting the settlement offer by Bradley Baldwin was solely for the purpose of terminating and eliminating any further expense on the part of Standard Fire". This choice, the expert concluded, "is the very definition and epitome of bad faith in the insurance industry."

After briefing and a hearing, the trial court granted summary judgment for Standard Fire. The court found that Standard Fire "has not breached a duty to any insured with respect to the Accident." And the court held that Standard Fire is "released from further liability as a result of the Accident; and that Standard Fire owes no further obligations or duties to any Defendants in this case."

Our court of appeals affirmed in part and reversed in part. *Baldwin v. Standard Fire Ins. Co.*, 238 N.E.3d 655, 668–69 (Ind. Ct. App. 2024). Relevant here, the panel reversed the trial court's entry of summary judgment for Standard Fire (and against Baldwin) on two issues. First, it held that a genuine issue of material fact existed on whether Standard Fire breached its duty of good faith and fair dealing when it declined Baldwin's initial settlement demand. *Id.* at 665. Second, relying on the attestations of Baldwin's expert witness, the panel held that a genuine issue of material fact also existed on whether Standard Fire acted in bad faith toward the Hummels. *Id.* at 667. The panel otherwise affirmed the trial court's judgment.

Standard Fire and Baldwin both sought transfer, which we granted, 253 N.E.3d 515 (Ind. 2025), thus vacating the appellate decision, Ind. Appellate Rule 58(A). Our opinion today addresses only the issues raised in Standard Fire's petition, and we summarily affirm the court of appeals on all

other issues. *Ibid.* We received friend-of-the-court briefs from the American Property and Casualty Insurers Association, Defense Trial Counsel of Indiana, the Indiana Trial Lawyers Association, the Insurance Institute of Indiana, and the National Association of Mutual Insurance Companies. We thank them for their helpful submissions.

## II

We affirm the trial court's grant of summary judgment for Standard Fire on Baldwin's claims for breach of the duty of good faith and fair dealing and for bad faith. At issue is whether Standard Fire acted properly in rejecting Baldwin's initial settlement demand and in filing an interpleader action to deal with the multiple potential claimants against the Hummels' insurance policy. Under the prevailing legal standard, which asks whether the insurer made "reasonable efforts to compromise and settle the matter", *Menefee v. Schurr*, 751 N.E.2d 757, 760 (Ind. Ct. App. 2001), this case is a close call. Questions of "reasonableness", after all, are typically fact questions precluding summary judgment. See *Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1164 (Ind. 2002). But circumstances like those before us today, which are common and recurring, warrant a different approach.

It is well-recognized that "[m]ultiple claimants with serious injuries can cause special problems regarding the duty to settle." 3 New Appleman on Ins. L. Lib. Ed § 23.02[9][a][i] (2024). The issue stems from the risk of exhausting policy limits by settling with some but not all claimants. The result is often a zero-sum game in which "the settlement of one claim may reduce the funds available to pay others." *Ibid.* Alternatively, the insurer may reject individual settlement demands in hopes of "equitably resolv[ing] all of the claims" together. *Ibid.* But even this latter approach risks "exposing the insured to an excess judgment if the spurned claimants choose to take their claims to judgment." *Ibid.* No matter what path the insurer takes, "someone is going to be unhappy with the result and may sue the insurer for bad faith." *Ibid.*

We proceed in two steps. First, because Indiana's appellate caselaw on this issue is sparse, we examine other jurisdictions to identify best practices for insurers dealing with multiple claimants and insufficient policy limits. We adopt Section 26 of the Second Restatement of Liability

Insurance as the governing standard in Indiana. This new standard both requires insurers to try to limit an insured's overall liability exposure and provides insurers with a "safe harbor" for limiting their own liability through an interpleader action. Second, we apply our new standard here and affirm the trial court's entry of judgment for Standard Fire.

## A

In recognition of an insurer's "special relationship" with its insured, Indiana imposes on insurers an implied duty of good faith and fair dealing. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). Any breach of this legal duty, which we imply "in all insurance contracts", exposes the insurer to compensatory damages, like any other breach of contract. *Id.* at 518–19. But an insurer that goes further and acts in bad faith toward its insured may be liable for punitive damages. *Id.* at 520. Though punitive damages are prohibited "in a breach of contract action", a bad-faith claim is "an independent tort for the breach of the insurer's obligation to exercise good faith . . . upon which punitive damages may be based." *Ibid.*

Here, Baldwin alleges that Standard Fire breached the duty of good faith and fair dealing and acted in bad faith. He offers the same rationale to support both claims: Standard Fire acted in its own best interests and not those of its insured when it rejected Baldwin's $50,000 settlement demand. Had Standard Fire accepted his demand, Baldwin says, it would have protected the Hummels from future excess liability. Viewed in isolation, if Standard Fire had rejected Baldwin's initial settlement demand and he were the only potential claimant, there might be some merit to his argument. Where "an opportunity appears to settle within the policy limits, thereby protecting the insured from excess liability," the insurer may be liable for rejecting the opportunity to fully settle the claims the insured faced. 3 New Appleman, § 23.02[2][b] (quoting *La Rotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 935 (Ill. App. Ct. 1980)).

But the accident here created the potential for two additional claimants besides Baldwin—namely, Hopkins and McCarty. A further complication is that Baldwin and Hopkins each had injuries likely exceeding the policy's $50,000 per-person limit. Combined, then, these two claimants threatened to consume the entire policy limit of $100,000, leaving nothing for

any potential claims by McCarty. Given these concerns, Standard Fire believed "the best way to protect" the Hummels was an interpleader action.

Our caselaw has never grappled in any depth with this issue of insurers facing many potential claims against an insufficient policy. To understand how best to handle this matter going forward, we briefly explore how other jurisdictions have addressed it before settling on a rule for Indiana.

1

Jurisdictions deal differently with this issue of multiple claimants with serious injuries whose claims threaten to outstrip the insured's coverage. There are two leading approaches: one grants an insurer "wide discretion" to handle settlement offers; the other requires the insurer to minimize the insured's overall liability exposure. For either approach, some jurisdictions recognize interpleader as an effective tool in these cases.

Some jurisdictions recognize that insurers have wide discretion to enter into settlement agreements on behalf of their insureds. This discretion in practice allows an insurer to "enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." *Texas Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994); *see also id.* at 315 n.2 (collecting cases). Some courts encourage settlements on a "first come, first served" basis, 3 New Appleman, § 23.02[9][a][i] (quoting *Voccio v. Reliance Ins. Cos.*, 703 F.2d 1, 3 (1st Cir. 1983) (applying Rhode Island law; collecting cases)); otherwise, an insurer may "delay settlement with some claimants based on the possibility that other claimants" may be harmed "by depletion of the policy limits." *Ibid.* Still, even with wide discretion in such jurisdictions, insurers that settle claims as they are presented remain open to the charge that they "hastily ma[d]e excessive settlements that deplete" the policy limits. *Ibid.*

Other jurisdictions require insurers to make settlement decisions with an eye toward minimizing their insureds' exposure to excess liability. Under this approach, "[t]he insurer's goal should be to try to effect settlement of all or some of the multiple claims so as to relieve its insured of so much of his potential liability as reasonably possible, considering the paucity of

the policy limits." *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 835 (1st Cir. 1990) (applying Massachusetts law) (citing *Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475, 481 (5th Cir. 1969) (applying Florida law)). Though this approach is thought to "impose more demanding obligations" on insurers than the "wide discretion" approach, 3 New Appleman, § 23.02[9][a][ii], "the insurer is not held to standards of omniscience or perfection; it has leeway to use, and should consistently employ, its honest business judgment." *Peckham*, 895 F.2d at 835. Even so, this latter approach places an insurer "at the mercy of a jury's later decision (aided by self-serving testimony from the claimants) that it could have eliminated more liability by a different settlement strategy." 3 New Appleman, § 23.02[9][a][ii].

With seeming pitfalls in both strict and more forgiving jurisdictions, insurers often turn to interpleader actions as a tool for managing competing claims. Interpleader allows for the joinder of multiple claimants to a common fund into a single action to divide proceeds among them equitably. T.R. 22(A). In Indiana, a party seeks interpleader by filing a pleading that names all interested parties and (1) admits liability with respect to the interpleaded funds; (2) declares that interpleader is being sought to mitigate exposure to multiple liability; and (3) requests that the named parties resolve their competing claims through the interpleader action. T.R. 22(C). At any point, the party seeking interpleader may deposit the interpleaded funds with the court and request that the party be "discharged from liability as to such claims, and the action continued as between the claimants" of such funds. T.R. 22(D).

As we have seen, other jurisdictions identify several approaches for addressing the problem of multiple claimants making demands against a single policy with a limited fund. Each approach offers distinct benefits and burdens. Next, we consider the best approach for balancing these competing concerns in Indiana.

2

Indiana law's "special relationship" between insurers and their insureds is the basis for imposing legal duties on insurers and recognizing claims against them if they breach these duties. *Erie Ins. Co.*, 622 N.E.2d at 518. To incentivize "fair play between insurer and insured", we allow

punitive damages if an insurer tortiously breaches its good-faith duty to its insured. *Id.* at 519. Our precedent for imposing duties on insurers, though, has its limits. We do not pile on ever greater duties no matter the cost. For decades we have recognized that imposing onerous burdens on insurers will lead them to "either close their doors or increase premium rates to the point where only the rich could afford insurance." *Vernon Fire & Cas. Ins. Co. v. Sharp*, 349 N.E.2d 173, 181 (Ind. 1976). Thus, our insurance law seeks to maintain a balance between protecting the interests of insureds while allowing for an active and competitive marketplace for insurers.

To that end, interpleader actions are a useful tool for maintaining that balance, especially when an insured faces the prospect of owing multiple claimants an amount exceeding the policy's limit. In that circumstance, an interpleader "prevent[s] one of multiple creditors from obtaining the advantage of obtaining the first judgment", along with protecting the insured from "double or multiple exposure to liability." *First Chicago Ins. Co.*, 141 N.E.3d at 64 (quotation omitted). Because of these benefits, "[i]nsurance companies frequently execute their duty to protect their insured from additional liability by bringing such interpleader actions." *Ibid.* Indeed, our court of appeals has already held that an insurer's interpleader action did not breach the duty of good faith when its insured faced "multiple claims, the total of which would meet, if not exceed, the limits of the policy." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 677 (Ind. Ct. App. 2007). One final benefit is that an interpleader "safe harbor" provides a path to resolving the claim "short of submitting each case to a jury." *McReynolds v. Am. Com. Ins. Co.*, 235 P.3d 278, 284 (Ariz. Ct. App. 2010) (applying Arizona's interpleader "safe harbor").

With these principles in mind, we adopt Section 26 of the Second Restatement of the Law of Liability Insurance. Section 26, which has two parts, distills the principles present in our caselaw. The first part imposes a duty on insurers:

> (1) If multiple legal actions that would count toward a single policy limit are brought against an insured, the insurer has a duty to the insured to make a good-faith effort to settle the

actions in a manner that minimizes the insured's overall exposure.

Restatement (Second) of the Law of Liability Insurance, § 26 (Oct. 2024). The second part provides insurers with a safe harbor from liability:

(2) The insurer may, but need not, satisfy this duty by interpleading the policy limits to the court, naming all known claimants, and, if the insurer has a duty to defend or a duty to pay defense costs on an ongoing basis, continuing to defend or pay the defense costs of its insured until:

(a) Settlement of the legal actions;

(b) Final adjudication of the actions; or

(c) Adjudication that the insurer does not have a duty to defend or to pay the defense costs of the actions.

*Ibid*.

We discern the following from these provisions. When confronted with multiple claimants against an insufficient insurance policy, insurers in Indiana should try to minimize their insureds' overall liability. See generally *Peckham*, 895 F.2d at 835 (describing the "insurer's goal" as to "relieve its insured of so much of his potential liability as is reasonably possible"). Insurers should make settlement decisions and manage policy limits with this goal in mind. But as we have also seen, this rule creates uncertainty and unpredictability to the extent it opens the door to the later argument that the insurer "could have eliminated more liability by a different settlement strategy." 3 New Appleman, § 23.02[9][a][ii]. To mitigate this uncertainty, insurers may rely on an interpleader action as a "safe harbor" that shields insurers from liability to their insureds. The comments to Section 26 emphasize that the safe-harbor provision "is principally directed at simple liability-insurance-coverage situations". Restatement (Second) of Liab. Ins., § 26 cmt. c. In other words, "[t]he more complex a liability insurance arrangement is, the more likely . . . . the safe harbor provided in subsection (2) may not be practicable." *Ibid.*

Having announced our new standard, we must now apply it.

B

Baldwin first charges Standard Fire with breaching the duty of good faith and fair dealing to its insured by rejecting his initial settlement demand. He also alleges Standard Fire acted in bad faith. We disagree on both counts.

1

The duty of good faith and fair dealing requires the insurer "to refrain from" certain behavior, including:

> (1) making an unfounded refusal to pay policy proceeds;
>
> (2) causing an unfounded delay in making payment;
>
> (3) deceiving the insured; and
>
> (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Erie Ins. Co.*, 622 N.E.2d at 519. In addition, "an insurer must give its insured's interests equal consideration with its own". 1 Allan D. Windt, *Ins. Claims & Disputes* § 5:1 (May 2025). Thus, "the insurer has a duty to the insured to make reasonable settlement decisions." Restatement (Second) of Liab. Ins., § 24(1).

Applying this principle here, we hold that Standard Fire did not breach the duty of good faith and fair dealing when it rejected Baldwin's initial settlement demand and filed an interpleader action. When confronted with Baldwin's $50,000 settlement demand, Standard Fire knew of at least one other claim (by Hopkins) that would likely exceed the policy's $50,000 per-person limit, and a third potential claimant (McCarty) who still had time to file a claim. Accepting Baldwin's initial settlement demand risked excluding McCarty from any recovery from the policy's proceeds and leaving her with no choice but to sue the Hummels personally. Facing these facts, Standard Fire filed an interpleader action to balance the interests of all parties given the constraints of the $100,000 per-accident policy limit.

Standard Fire's conduct falls squarely within our "safe harbor" provision for interpleaders. The safe harbor's eligibility requirements are straightforward. An insurer facing multiple claims against a single policy limit may satisfy its good-faith duty "by interpleading the policy limits to the court, naming all known claimants, and, if the insurer has a duty to defend . . . , continuing to defend" the insured till the litigation ends. *Id.* § 26(2). Standard Fire satisfied these requirements when it filed its interpleader action, named all known potential claimants (Baldwin, Hopkins, and McCarty), deposited the full $100,000 policy limit with the trial court, and continued to provide defense counsel to the Hummels. Facing the prospect of multiple claimants whose injuries exceeded the policy limits, Standard Fire did not breach its duty of good faith and fair dealing to the Hummels by filing an interpleader action.

Baldwin attacks Standard Fire's decision to rely on interpleader in several ways. First, he argues that Standard Fire is ineligible for the safe harbor because it did not "timely" file its interpleader action. Baldwin notes that "Standard Fire did not file and pursue the interpleader action within the timeframe to respond to Baldwin's offer of settlement" and did not "deposit the policy proceeds with the trial court at the time of filing the interpleader." Thus, Baldwin argues, we should fault Standard Fire for its untimely submission. We disagree.

For one thing, Section 26 contains no "timeliness" requirement. What is more, Standard Fire's interpleader action fully complied with all applicable deadlines under our trial rules. See T.R. 22 (governing interpleader). Even jurisdictions that have not adopted Section 26 have found an interpleader action is timely if "filed within the time permitted" by the governing rules of court. *McReynolds*, 235 P.3d at 282.

Baldwin also questions Standard Fire's basis for filing an interpleader action. He claims the decision to file interpleader breached the duty of good faith because "any reasonably prudent [insurer] would have accepted [his] settlement demand and risked the excess exposure of McCarty's unknown and merely potential claim." Even accepting that Standard Fire should have known that Baldwin's claim was more serious than McCarty's and should have prioritized his initial settlement demand

accordingly, these omissions cannot render the decision to seek inter-
pleader a breach of the duty of good faith. Under our safe-harbor provi-
sion, Baldwin's claim that the insurer "could have eliminated more liabil-
ity by a different settlement strategy" is no basis for finding a breach of
duty. 3 New Appleman, § 23.02[9][a][ii]. Once an insurer properly invokes
interpleader's safe harbor—by depositing policy limits, naming all claim-
ants, and providing a defense—it has fulfilled its duties to its insured as a
matter of law. Standard Fire's compliance with these requirements entitles
it to summary judgment on the good-faith-and-fair-dealing claim.

We turn, finally, to Baldwin's bad-faith claim.

2

Plaintiffs alleging bad faith face a higher burden of proof because of the
availability of punitive damages. "Punitive damages may be awarded
only if there is clear and convincing evidence that the defendant 'acted
with malice, fraud, gross negligence, or oppressiveness'". *Erie Ins. Co.*, 622
N.E.2d at 520 (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135,
137–38 (Ind. 1988)). The point of punitive or exemplary damages is "to
punish the defendant and to deter it and others from like conduct in the
future." *Ibid.* It is not enough that the defendant may have been negligent
or exercised poor judgment; "the additional element of conscious wrong-
doing must also be present." *Erie Ins. Exch. v. Craighead*, 192 N.E.3d 195,
204 (Ind. Ct. App. 2022) (quotation omitted).

There is a close relationship between a claim alleging a breach of the
duty of good faith and one alleging bad faith. In Indiana, the latter derives
from the former. *Erie Ins. Co.*, 622 N.E.2d at 520. A claimant must prove,
first, a breach of the duty of good faith. *Ibid.* Only then does the claimant
have the opportunity "to establish the right to punitive damages" by
proving the insurer acted more culpably—i.e., in bad faith. *Ibid.* As we ex-
plained in *Erie Insurance Company*, "breach of the insurer's obligation to
exercise good faith provides the tort upon which punitive damages may
be based." *Ibid.*

Baldwin's bad-faith claim fails as a matter of law. His primary evidence
of bad faith is from his insurance expert, who attested that Standard Fire's

decision to reject Baldwin's initial settlement demand and file an interpleader "is the very definition and epitome of bad faith in the insurance industry." This purported evidence of bad faith necessarily fails on this record, given our conclusion above that Standard Fire did not breach its duty of good faith and fair dealing with its interpleader action. There can be no bad faith if an insurer does not violate its duty of good faith.

\* \* \*

For these reasons, we affirm the trial court's entry of summary judgment for Standard Fire. To the extent the court of appeals' opinion decided issues not addressed here, we summarily affirm it on those issues.

Rush, C.J., and Massa and Molter, JJ., concur.
Goff, J., concurs in part and dissents in part with separate opinion.

ATTORNEYS FOR APPELLANT BRADLEY BALDWIN
Michael E. Simmons
Hannah K. Brady
Ann Marie Waldron
Hume Smith Geddes Green & Simmons, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE THE STANDARD FIRE INSURANCE COMPANY
Erika S. Stamper
Michael L. Resis
Amundsen Davis, LLC
Chicago, Illinois

William K. McVisk
Todd S. Schenk
Tressler, LLP
Chicago, Illinois

ATTORNEYS FOR AMICI CURIAE INSURANCE INSTITUTE OF INDIANA, NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES, & AMERICAN PROPERTY AND CASUALTY INSURERS ASSOCIATION

Maggie L. Smith
Darren A. Craig
Frost Brown Todd LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE DEFENSE TRIAL COUNSEL OF INDIANA

Donald P. Eckler
Freeman, Mathis & Gary, LLP
Chicago, Illinois

Lucy R. Dollens
Quarles & Brady
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE INDIANA TRIAL LAWYERS ASSOCIATION

Gregory M. Gotwald
Ryan T. Leagre
Christopher E. Kozak
Nabeela Virjee
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

Tara M. Worthley
Worthley Law
Valparaiso, Indiana

**Goff, J., concurring in part, dissenting in part.**

Bradley Baldwin was in a car accident with Tommi Hummel. John Hopkins and Jill McCarty were passengers in Tommi's car. Baldwin and Hopkins were seriously injured, but McCarty fled the scene, apparently unharmed. Tommi and her husband Travor Hummel had a Standard Fire insurance policy with a $50,000 per person and $100,000 per accident policy limit. Baldwin sued the Hummels and offered to settle at the per-person policy limit. But Standard Fire did not accept the offer. Standard Fire knew that Hopkins was likely to make a claim which, along with Baldwin's offer, would exhaust the policy limit, so if McCarty sued later, the Hummels would be personally liable.

Instead, Standard Fire filed an interpleader action for the policy limit of $100,000, naming Baldwin, Hopkins, and McCarty. The court released $50,000 to Baldwin and $50,000 to Hopkins. In an independent confidential settlement agreement with Baldwin, the Hummels agreed to a $700,000 judgment against them and to assign any claims they have against Standard Fire to Baldwin. In return, Baldwin would forego his right to pursue recovery of judgment against the Hummels personally.[1] Baldwin, having been assigned claims from the Hummels, filed counterclaims against Standard Fire in the interpleader action alleging that Standard Fire breached its duty of good faith and acted in bad faith against the Hummels.[2]

The Court affirms the trial court's entry of summary judgment for Standard Fire, concluding that an insurer does not breach its duty of good

---

[1] Baldwin also sued the passengers, Hopkins and McCarty, alleging that they were liable for Tommi's negligence. McCarty failed to answer or appear, so the trial court entered a default judgment against her for $700,000. She died soon after. Her estate entered an agreement with Baldwin to assign any and all claims McCarty had against Standard Fire in exchange for Baldwin entering a satisfaction of judgment on his claims against McCarty.

[2] I concur in the Court's decision to summarily affirm the Court of Appeals' conclusions that the Hummels could not assign their claim that the counsel Standard Fire hired for them was negligent, Standard Fire was not bound to the $700,000 settlement between Baldwin and the Hummels, and McCarty was not an insured under the Hummels' policy. *Ante*, at 5–6.

faith or act in bad faith by filing an interpleader action for policy limits when insurance coverage is insufficient to satisfy multiple claimants. *Ante*, at 2. But here, filing an interpleader action may have been a breach of the duty of good faith if Standard Fire's fear that McCarty would make a claim was unreasonable. And Baldwin, in my view, presented sufficient facts for a fact finder to conclude Standard Fire acted in bad faith.

## I. Standard Fire may have breached its duty of good faith by filing an interpleader action if it lacked reasonable fear that McCarty would make a claim.

Indiana law imposes a duty of good faith and fair dealing on insurers to discharge their contractual obligations towards a policyholder. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993). This includes "the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* Whether an insurer, in its exercise of good faith and fair dealing toward its policyholders, has an obligation to settle when an offer is made at the policy limit turns on whether "a reasonably prudent person would, in light of the person's potential exposure to a judgment in excess of the settlement amount, have settled." 1 Allan D. Windt, Ins. Claims & Disputes: Representation of Ins. Companies and Insureds § 5:1 (6th ed.) (Westlaw database updated May 2025). "If multiple legal actions that would count toward a single policy limit are brought against an insured, the insurer has a duty to the insured to make a good-faith effort to settle the actions in a manner that minimizes the insured's overall exposure." Am. Law Inst., Restatement (Second) of the Law of Liability Insurance § 26(1), at 244 (2019).

Standard Fire argues that it faced a Hobson's Choice. If Standard Fire had accepted the settlement demand and exhausted the policy limit but McCarty later sued, the Hummels would face personal liability and could argue Standard Fire breached its duty of good faith. But because Standard

Fire did not accept the settlement demand, Baldwin ended up obtaining a judgment exceeding the policy limit, still leaving the Hummels personally liable for the balance. By filing the interpleader action naming Baldwin, Hopkins, and McCarty, Standard Fire conceded that it had to pay the policy limit but was unsure who to pay. Standard Fire argues that by filing the interpleader action, it satisfied its duty of good faith as a matter of law.

To address this Hobson's Choice, the Court adopts the "safe harbor" in section 26 of the Restatement (Second) of the Law of Liability Insurance. *Ante*, at 10. The safe harbor provides that, if multiple legal actions would count toward a single policy limit, "[t]he insurer may, but need not, satisfy [its duty to make a good-faith effort to settle] by interpleading the policy limits to the court, naming all known claimants." Restatement (Second) of the Law of Liability Insurance § 26(2), at 244. I concur in the Court's holding adopting the safe harbor but disagree that Standard Fire is entitled to summary judgment. In my view, there is an issue of material fact as to whether Standard Fire reasonably feared McCarty would make a claim.

Interpleading policy limits provides little benefit to the policyholder because it can still leave the policyholder personally liable. "An interpleader can only enjoin other actions with respect to the fund interpleaded; it cannot enjoin pursuit of other sources of payment, such as the insured." 1 New Appleman Ins. Bad Faith Litig. § 2.03[9][a][iv] (2d ed. Lexis 2025); *see* Ind. Trial Rule 22(D). Because interpleader provides little to no benefit to the policyholder and instead protects insurers, interpleader should only be used when there is "a real and reasonable fear of double liability or vexatious, conflicting claims to justify interpleader." *Indianapolis Newspapers, Inc. v. Ind. State Lottery Comm'n*, 739 N.E.2d 144, 152 (Ind. Ct. App. 2000) (internal quotation marks and citation omitted), *trans. denied*.

But here, a fact finder could conclude that Standard Fire did not have a "real and reasonable fear" that McCarty would make a claim against the policy. According to Baldwin, Standard Fire made minimal efforts to contact McCarty after the accident. Their investigation revealed that

McCarty fled the scene of the accident, presumably because of drug paraphernalia found in the car. She had previously spent time in jail for selling drugs. And when Baldwin sued McCarty for contributing to the accident, she defaulted rather than filing a third-party complaint against the Hummels and their policy. Instead of minimizing the Hummels' exposure to personal liability, Standard Fire's actions exposed them to more liability. By placing the policy limit in an interpleader action, the Hummels were exposed to excess judgment in all three claims, rather than just a potential claim from McCarty. Had Standard Fire settled with Baldwin at the per-person limit, Baldwin could not seek more money from the Hummels. Standard Fire could have then placed the rest of the policy limit in interpleader naming Hopkins and McCarty.

To use interpleader, Standard Fire had to have a "real and reasonable" fear of a third claim from McCarty, and Baldwin presented sufficient facts that the fear might not have been reasonable.

## II. Standard Fire may have acted in bad faith.

The Court also concludes that Standard Fire did not act in bad faith towards the Hummels. But Baldwin presented evidence for a fact finder to conclude that Standard Fire acted in bad faith by placing the policy limit in an interpleader action.

Bad faith involves more than "bad judgment or negligence." *Johnston v. State Farm Mut. Auto. Ins. Co.*, 667 N.E.2d 802, 805 (Ind. Ct. App. 1996), *trans. denied.* To prove bad faith, there must be evidence of conscious wrongdoing, dishonest purpose, moral obliquity, furtive design, or ill will. *Id.*; *Erie Ins. Exch. v. Craighead*, 192 N.E.3d 195, 204 (Ind. Ct. App. 2022), *trans. denied*.

Here, Standard Fire determined that Baldwin's damages would likely fall between $75,000 and $100,000. And by failing to accept Baldwin's settlement offer at the per-person policy limit of $50,000, the Hummels were exposed to a damages verdict exceeding the policy limit. Depositing the policy limit into an interpleader action benefited Standard Fire by reducing its defense litigation expenses but provided no benefit to the

Hummels because Baldwin could still seek damages exceeding the policy limit against the Hummels personally. According to Baldwin's expert, Standard Fire "solely intended to benefit [itself] and did not fully, or even properly, consider the adverse effects which such a chosen path would impose upon [the Hummels] as the insureds." Appellants' App. Vol. 39, p. 29. Placing its "interests above those of the insureds in such a manner," the expert opined, "is the very definition and epitome of bad faith in the insurance industry." *Id.*

Therefore, in my view, Baldwin presented sufficient facts for a fact finder to conclude Standard Fire acted in bad faith.

## Conclusion

Though I concur in the Court's holding adopting the Restatement's safe-harbor provision, I disagree that Standard Fire is entitled to summary judgment. As I see it, Baldwin has presented sufficient facts for a fact finder to conclude Standard Fire may have breached its duty of good faith or acted in bad faith. I would therefore reverse the trial court's grant of summary judgment for Standard Fire as to these issues.